## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARSHA SCHERER, derivatively on behalf<br>DIODES INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>KEH-SHEW LU ,  RAYMOND SOONG ,<br>C.H. CHEN ,  MICHAEL R. GIORDANO,<br>L.P. HSU,  JOHN M. STITCH, and<br>MICHAEL K.C. TSAI ,<br><br>Defendants,<br><br>-and-<br><br>DIODES INCORPORATED, a Delaware<br>Corporation,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## VERIFIED AMENDED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff Marsha Scherer ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the Plaintiff herself, which are alleged upon knowledge, as follows:

1.     Plaintiff asserts this action for breach of fiduciary duties and waste of corporate assets derivatively on behalf of Diodes Incorporated ("Diodes" or the "Company") against the Company's Board of Directors (the "Board") for exceeding its authority under the Company's

2001 Omnibus Equity Incentive Plan, which was most recently approved by shareholders in 2009 (the "Incentive Plan").

2.      In particular, the Incentive Plan, which provides for the granting of equity awards to the Company's executive officers, limits the amount of stock options that may be granted to any individual participant within any one calendar year to 100,000 shares.

3.      As described in more detail below, in each year from 2010 through 2012, the Board's Compensation Committee granted the Company's President and Chief Executive Officer, Keh-Shew Lu ("Lu") stock options in excess of the shareholder-approved limit, granting him 196,000 options in each year from 2010 through 2012. The excess awards granted to Lu are *ultra vires* and should be rescinded.

4.      Additionally, on April 13, 2010, April 15, 2011, and April 12, 2012 the Board filed Schedule 14A Proxy Statements (collectively, the "Proxy Statements") with the U.S. Securities and Exchange Commission (the "SEC"), in which the Board solicited and received shareholder approval for, among other things, the re-election of the Company's directors. However, each of the Proxy Statements failed to disclose that the Board violated the terms of the Incentive Plan during the prior fiscal year, and affirmatively misrepresented that the grants to Lu complied with the terms of the Incentive Plan. The Board's conduct constitutes a breach of its fiduciary duty of candor.

5.      As a result of the above misconduct, the Company and its shareholders have been harmed.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states (and foreign states) and the matter in

controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of New York and no defendant is a citizen of New York.

7.      This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.      Venue is proper in this district because nominal defendant Diodes is incorporated in this district.

## THE PARTIES

9.      Plaintiff is a shareholder of Diodes and has been a shareholder of Diodes since March 9, 2011. Plaintiff is a resident of New York.

10.     Nominal party Diodes is a Delaware corporation with its principal place of business at 4949 Hedgcoxe Road, Suite 200, Plano, Texas 75024. Diodes is a leading global provider of Discrete, Analog and Logic semiconductors serving the consumer electronics, computing, communications, industrial and automotive markets.

11.     Defendant Lu has been the Company's Chief Executive Officer and President since June 2005 and a director of the Company since 2001. Lu is a resident of Texas.

12.     Defendant Raymond Soong ("Soong") has been a director of the Company and Chairman of the Board since 1992. Soong has also been the Chair of the Board's Compensation Committee (the "Compensation Committee") during the time the challenged stock options discussed herein were granted. Soong is a resident of Texas.

13.     Defendant C.H. Chen ("Chen") has been a director of the Company since 2000, and has served as the Vice Chairman of the Board since June 2005. Chen is a resident of Taiwan.

14.     Defendant Michael R. Giordano ("Giordano") has been a director of the Company since 1990. Giordano is a resident of California.

15.     Defendant L.P. Hsu ("Hsu") has been a director of the Company since 2007, and has been a member of the Compensation Committee during the time the challenged stock options discussed herein were granted. Hsu is a resident of Taiwan.

16.     Defendant John M. Stitch ("Stitch") has been a director of the Company since 2000. Stitch is a resident of Texas.

17.     Defendant Michael K.C. Tsai ("Tsai") has been a director of the Company since May 24, 2010, and has been a member of the Compensation Committee during the time the challenged stock options discussed herein were granted. Tsai is a resident of Taiwan.

18.     Defendants listed in ¶¶ 11-17 are hereinafter collectively referred to as the "Defendants" or the "Board."

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Incentive Plan*

19.     In 2001, the Incentive Plan was adopted by Diodes's Board of Directors and approved by the Company's shareholders. The Incentive Plan provides for the granting of equity awards such as stock options, restricted stock, and restricted stock units to the Company's officers, directors, employees and independent contractors.  The Incentive Plan is administered by the Board's Compensation Committee.

20.     The Incentive Plan limited the number of stock options that could be granted to any plan participant within one calendar year to 100,000 shares. Specifically, Section 6(a) of the Incentive Plan states: "No person may be granted (in any calendar year) options to purchase more than one-hundred thousand (100,000) shares of Common Stock (subject to adjustment pursuant to Section 15 below)."

21.     Section 15 of the Incentive Plan provided the Compensation Committee with the ability to adjust the 100,000 annual limit to appropriately account for changes in the Company's capitalization, such as stock splits.

22.     After the Incentive Plan's adoption in 2001, the Company undertook several stock splits. Specifically, the Company effected a 3:2 stock split on each of November 26, 2003, December 1, 2005, and July 31, 2007.

23.     As a result, the Compensation Committee adjusted the 100,000 limit to account for the stock splits, increasing the limit to 337,500. This increase was specifically noted in the Company's Schedule 14(a) Proxy Statement filed with the SEC on April 14, 2008, which stated: "[T]he 2001 Incentive Plan states that in the case of stock options, stock appreciation rights, and stock awards no person may receive in any year a stock option to purchase more than 337,500 shares or a stock appreciation right or stock award measured by more than 337,500 shares."

24.     The following year the Board decreased the limit from 337,500 back to 100,000. Specifically, on April 17, 2009, the Company filed a Schedule 14A Proxy Statement (the "2009 Proxy") with the SEC in connection with its 2009 annual meeting. In the 2009 Proxy, the Board sought, among other things, re-approval of the Incentive Plan with certain amendments, and recommended that shareholders vote to reapprove the amended version of the Incentive Plan. Each of the Defendants, other than defendant Tsai, was on the Board that recommended that shareholders reapprove the Incentive Plan.

25.     In describing the Incentive Plan, the 2009 Proxy stated: "[T]he 2001 Incentive Plan states that in the case of stock options and stock appreciation rights, no person may receive in any year a stock option to purchase more than 100,000 shares or a stock appreciation right measured by more than 100,000 shares."

26.     Section 6(a) of the Incentive Plan, which was attached as an exhibit to the 2009 Proxy, states: "No person may be granted (in any calendar year) options to purchase more than one-hundred thousand (100,000) shares of Common Stock (subject to adjustment pursuant to Section 15 below)."

27.     The Company's shareholders reapproved the Incentive Plan (with the 100,000 limit) on May 28, 2009.  The Company has had no further stock splits since that date.

### The Ultra Vires Grants

28.     During each of 2010, 2011, and 2012, the Compensation Committee granted Lu more stock options than allowed under the Incentive Plan.

29.     Specifically, on May 24, 2010, the Compensation Committee granted Lu 196,000 stock options under the Incentive Plan.  Lu filed a Form 4 disclosing this grant on May 26, 2010 and the 2011 Proxy also disclosed that Lu received 196,000 stock options during 2010.

30.     On May 26, 2011, the Compensation Committee again granted Lu 196,000 stock options under the Incentive Plan.  Lu filed a Form 4 disclosing this grant on May 31, 2011 and the 2012 Proxy also disclosed that Lu received 196,000 stock options during 2011.

31.     And on May 21, 2012, the Compensation Committee once again granted Lu 196,000 stock options under the Incentive Plan. Lu filed a Form 4 disclosing this grant on May 23, 2012.

32.     As described above, the Incentive Plan, as most recently approved by Diodes shareholders on May 28, 2009, provides in clear, unambiguous terms, that no individual may be granted more than 100,000 stock options in one calendar year.

33.     Consequently, the excess stock options granted to Lu (96,000 stock options in each of 2010, 2011, and 2012) are *ultra vires* and should be rescinded.[1]

### The 2010, 2011 and 2012 Proxies are False and Misleading

34.     On April 13, 2010, April 15, 2011, and April 12, 2012 the Board filed the 2010, 2011 and 2012 Proxy Statements, respectively, in which the Board solicited and received shareholder approval for, among other things, the re-election of the Company's directors.

35.     However, each of the Proxy Statements contained materially false and misleading statements and omitted material facts regarding the terms and limits of the Incentive Plan as well as the Board's compliance with these terms and limits in violation of the Board's duty of candor.

36.     Each of the 2010, 2011 and 2012 proxies describes, among other things, the Company's executive compensation policies and programs, the executive compensation decisions made by the Board and the Compensation Committee in connection with the prior fiscal year, and the amount and form of compensation received by the Company's named executive officers during the prior fiscal year.

37.     However, in these discussions, the Proxy Statements fail to disclose that during the prior fiscal year, defendant Lu had been granted more shares than allowed under the shareholder-approved Incentive Plan.

38.     Moreover, each of the Proxy Statements affirmatively misrepresented the per-participant annual limit, thus conveying the impression that the Board and Compensation Committee have acted in compliance with the Incentive Plan.  Specifically, when describing the terms of the Incentive Plan, the 2010, 2011 and 2012 proxies all state:

---

[1] The Compensation Committee granted 222,000 stock options to Lu on May 28, 2009, also exceeding the 100,000 per-participant annual limit. Because this grant is outside the applicable statute of limitations, it is not the subject of this Complaint.

As a result of the enactment of Section 162(m) of the IRCode, and to provide the Compensation Committee flexibility in structuring awards, the 2001 Incentive Plan states that in the case of stock options and stock appreciation rights, no person may receive in any year a stock option to purchase more than 337,500 shares (split adjusted) or a stock appreciation right measured by more than 337,500 shares (split adjusted).

39.    A reasonable shareholder would find it important to know when considering whether to re-elect a director to another term that the director has previously disregarded a shareholder-approved compensation plan.   Accordingly, the Board's conduct constituted a breach of the fiduciary duty of candor.

## DEMAND FUTILITY ALLEGATIONS

40.    Plaintiff brings this action derivatively on behalf of Diodes to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

41.    Plaintiff has owned Diodes stock continuously since March 2011 and continues to hold Diodes stock.

42.    Plaintiff will adequately and fairly represent the interests of Diodes in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

43.    At the time of this filing the Board consists of the following seven (7) directors: Lu, Soong, Chen, Giordano, Hsu, Stitch and Tsai, each of whom was a Board member at the time the stock options challenged herein were granted, and has been named as a defendant in this action.

44.    Plaintiff did not make a demand on the Board prior to instituting this Action. A pre-suit demand upon the Board is futile for several reasons.

45.     The Board (by granting, authorizing and/or by abdication of duty permitting grants to Lu) violated an express, unambiguous provision of the shareholder-approved Incentive Plan. In addition, the Board misrepresented in the Proxy Statements that the grants to Lu were in compliance with the terms of the Incentive Plan. These facts raise doubt that the Board's actions resulted from a valid exercise of business judgment. In addition, as a result of these actions, the Board faces a substantial likelihood of liability and therefore is incapable of objectively considering demand here. Accordingly, demand is excused.

46.     Defendants Soong, Hsu and Tsai were members of the Compensation Committee during the time the challeneged stock options were granted. The Compensation Committee granted awards to Lu in violation of the express, unambiguous terms of the Incentive Plan, and then misrepresented in the Proxy Statements that the grants to Lu were in compliance with the terms of the Incentive Plan. These actions could not have been a good faith exercise of business judgment. In addition, as a result of their actions, Defendants Soong, Hsu, and Tsai face a substantial likelihood of liability and therefore are incapable of objectively considering a demand here.  Accordingly, demand is excused as to Soong, Hsu, and Tsai.

47.     Defendant Lu is incapable of considering a demand in this Action because he is neither disinterested nor independent. Lu received the awards challenged herein, and thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action because it could force him to disgorge the improperly obtained awards. This creates an unacceptable conflict that restricts him from evaluating this action independently.  In addition, Lu has served as the Company's CEO and President since 2005 and receives substantial compensation as a result of his employment with the Company. Because of his dependence on the Company for his employment and continued compensation, he lacks sufficient independence

with which to render a disinterested decision on whether to pursue the derivative claims. Indeed, the 2012 Proxy acknowledges that Lu does not qualify as an "independent" director within the meaning of the NASDAQ listing standards.

## COUNT I
### Breach of Fiduciary Duty
### (Against Defendants)

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     As officers and/or directors of the Company, each of the Defendants owed the Company and its shareholders the fiduciary obligations of loyalty, candor, good faith, and due care.

50.     In authorizing, approving, and/or by abdication of duty permitting the granting of stock options in violation of the terms of the Incentive Plan, the Defendants exceeded their authority under the Incentive Plan and did not act in good faith toward the Company, and thus breached their fiduciary duties under Delaware law.

51.     These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of Lu at the expense and to the detriment of the Company.

52.     Lu breached his fiduciary duties to the Company by accepting grants in violation of the Incentive Plan for his own personal benefit at the expense and to the detriment of the Company. Accordingly, Lu breached his fiduciary duty of loyalty and good faith.

53.     Defendants have also breached their fiduciary duty of candor by causing the Company to issue the materially false and misleading 2010, 2011 and 2012 Proxy Statements.

54.     As a result of Defendants' actions, the Company has been and will be damaged.

55.     Plaintiff and the Company have no adequate remedy at law.

## COUNT II
## Waste of Corporate Assets
## (Against Defendants)

56.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

57.     The Defendants have caused and will cause the Company to waste valuable corporate assets by granting Lu stock options in excess of what was authorized under the Incentive Plan.

58.     By granting Lu stock options in excess of the amount allowed under the Incentive Plan from 2010-2012, Defendants granted Lu stock options that no director of ordinary sound business judgment would award, so as to constitute waste.

59.     As a result of this waste of corporate assets, the Defendants are liable to the Company.

## COUNT III
## Unjust Enrichment
## (Against Lu)

60.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

61.     Lu received unauthorized personal financial benefits as a result of the stock option grants challenged herein.

62.     It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Lu to retain the benefits of the stock options that were granted in express violation of the Incentive Plan.

63.     Lu has been unjustly enriched at the expense and to the detriment of the Company.

64.     Accordingly, this Court should order Lu to disgorge the grants awarded in excess of the applicable calendar year limit in the Incentive Plan for the years 2010-2012.

65.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     A declaration that the stock options granted to Lu in 2010, 2011 and 2012 in excess of the per participant calendar year limit was *ultra vires* and not authorized by the Incentive Plan;

B.     Rescission of the excess stock options awarded to Lu;

C.     A declaration that the Proxy Statements are materially fale and misleading;

D.     Ordering a re-election of directors following dissemination of a complete and accurate proxy statement;

E.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and violation of the Incentive Plan, plus pre-judgment and post-judgment interest;

F.     Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

G.      Directing Diodes to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and policies and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

H.      Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

I.      Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated: March 5, 2013                          Respectfully submitted,


                                              FARNAN LLP


                                              /s/ Brian E. Farnan
                                              Brian E. Farnan (Bar No. 4089)
                                              Michael J. Farnan (Bar No. 5165)
                                              919 N. Market Street, 12th Floor
                                              Wilmington, Delaware 19801
                                              Tel: (302) 777-0300
                                              Fax: (302) 777-0301
                                              bfarnan@farnanlaw.com



*Of Counsel*:

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*