## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARSHA SCHERER, derivatively on behalf
of DIODES INCORPORATED,

        Plaintiff,

   v.

KEH-SHEW LU, et al.,                             Case No. 13-cv-358 (GMS)

        Defendants,
-and-

DIODES INCORPORATED, a Delaware
Corporation,

        Nominal Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com

Of Counsel:
Eduard Korsinsky
Steven J. Purcell
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ......................................................................2

SUMMARY OF ARGUMENT ...............................................................................................3

STATEMENT OF FACTS .......................................................................................................3

      A. Plaintiff's Claims....................................................................................................3

      B. Defendants' Remedial Measures...........................................................................4

ARGUMENT.............................................................................................................................5

I.  Plaintiff Is Entitled to an Award of Reasonable Attorneys' Fees and Expenses
In This Action Because It Has Conferred a Substantial Benefit on Diodes and Its
Shareholders ....................................................................................................................5

A. Applicable Legal Standard .........................................................................................5

B. Plaintiff's Action Was Meritorious When Filed ......................................................7

C. This Action Produced a Benefit to Diodes and Its Shareholders Before a Judicial
Resolution Was Required............................................................................................11

D. The Resulting Benefits Were Caused By Plaintiff...................................................14

II. The Requested Attorneys' Fees and Expenses Are Reasonable ..................................15

CONCLUSION..........................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Allied Artists Pictures Corp. v. Baron,*
   413 A.2d 876 (Del. 1980) ..........................................................................................7

*Ams. Mining Corp. v. Theriault,*
   51 A.3d 1213 (Del. 2012) ...........................................................................6, 15, 17, 19

*Arnold v. Soc'y for Sav. Bancorp,*
   650 A.2d 1270 (Del. 1994) .......................................................................................10

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) ....................................................................................8, 9, 10

*Britton v. Parker,*
   2009 WL 3158133 (D. Colo. Sept. 23, 2009) ...........................................................11

*California Pub. Employees' Ret. Sys. v. Coulter,*
   2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ............................................................9

*Chrysler Corp. v. Dann,*
   223 A.2d 384 (Del. 1966) ..........................................................................7, 10, 13, 17

*Conrad v. Blank,*
   940 A.2d 28 (Del. Ch. 2007) .................................................................................8, 9, 10

*Cullen v. Whitman Med. Corp.,*
   197 F.R.D. 136 (E.D. Pa. 2000) ...............................................................................17

*Franklin Balance Sheet Inv. Fund, et al. v. Crowley,*
   2007 WL 2495018 (Del. Ch. Aug. 30, 2007) ......................................................14, 15

*IBEW Local Union 98 v. Noven Pharmaceuticals Inc.,*
   C.A. 4732-CC (Del. Ch. Dec. 8, 2009) ....................................................................18

*In re Aetna Inc. Sec. Litig.,*
   MDL No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .........................17

*In re ATI Techs., Inc. Sec. Litig.,*
   No. 01-2541, 2003 U.S. Dist. LEXIS 7062 (E.D. Pa. Apr. 28, 2003) .......................17

*In re Auto. Refinishing Paint Antitrust Litig.,*
   MDL No. 1426, 2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) .......................17

*In re BEA Sys. Derivative Litig.,*
   2009 U.S. Dist. LEXIS 30864 (N.D. Cal. Mar. 27, 2009) ...........................................5

*In re Cell Pathways, Inc.,*
   No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359 (E.D. Pa. Sept. 24, 2002) ..............17

*In re Cendant Corp.,*
   232 F. Supp. 2d 327 (D.N.J. 2002) .....................................................................15, 19

*In re EquiMed, Inc. Sec. Litig.,*
   No. 98-cv-5374 (NS), 2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003) ..........17

*In re Genentech, Inc. S'holders Litig.*,
 Cons. C.A. No. 14265 (Del. Ch. Aug. 26, 1996)................................................16

*In re Ikon Office Solutions v. Stuart*,
 194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................17

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
 No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)........................................19

*In re Ravisant Techs., Inc. Sec. Litig.*,
 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005)....................................17

*In re Sauer-Danfoss Inc. S'holders Litig.*,
 C.A. No. 5162-VCL, 2011 Del. Ch. LEXIS 64 (Del. Ch. Apr. 29, 2011) ................18

*In re Staples, Inc. S'holders Litig.*,
 C.A. No. 18784 (Del. Ch. Aug. 16, 2001)........................................................18

*In re Talley Indus., Inc. S'holders Litig.*,
 C.A. No. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998)...........................14

*In re Tele-Communications, Inc. S'holders Litig.*,
 C.A. No. 16470, 2005 WL 3642727 (Del. Ch. Dec. 21, 2005)........................10

*In re United Therapeutics Corp. Derivative Litig.*,
 Cons. C.A. No. 4946 (Del. Ch. Jan. 21, 2011)................................................16

*In re UnitedHealth Group, Inc. S'holder Derivative Litig.*,
 631 F. Supp. 2d 1151 (D. Minn. 2009)........................................................11, 12

*In re Zenith Nat'l Ins. Corp. S'holders Litig.*,
 C.A. 5296-VCL (Del. Ch. July 26, 2010)........................................................18

*In re Zoran Corp. Derivative Litig.*,
 511 F. Supp. 2d 986 (N.D. Cal. 2007)...............................................................11

*Joy Mfg. Corp. v. Pullman-Peabody Co.*,
 729 F. Supp. 449 (W.D. Pa. 1989) ...............................................................7, 14

*Kahan v. Rosenstiel*,
 424 F.2d 161 (3d Cir. 1970) ..........................................................................6, 7

*Lewis v. Chiles*,
 719 F.2d 1044 (9th Cir. 1983) ...........................................................................5

*Mills v. Electric Auto-Lite Co.*,
 396 U.S. 375 (1970) .......................................................................................6, 7

*Moses v. Pickens*,
 1982 Del. Ch. LEXIS 486 (Nov. 10, 1982)...........................................11, 12, 16

*Rales v. Blasband*,
 534 A.2d 927 (Del. 1993)..........................................................................8, 9, 10

*Ryan v. Gifford*,
 918 A.2d 341 (Del. Ch. 2007) .................................................................. passim

*Ryan v. Gifford,*
    2009 Del. Ch. LEXIS 1 (Jan. 2, 2009)......................................................................11, 12, 13

*Sanders v. Wang,*
    1999 Del. Ch. LEXIS 203 (Nov. 8, 1999) ..........................................................................8, 9

*Sanders v. Wang,*
    2001 Del. Ch. LEXIS 82 (May 4, 2001)......................................................................12, 15, 16

*Sec. Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assoc.,*
    979 F.2d 329 (3d Cir. 1992) ....................................................................................................5

*Shlensky v. Dorsey,*
    574 F.2d 131 (3d Cir. 1978) ..................................................................................................15

*St. Louis Ret. Sys. v. Severson,*
    C.A. No. 12-CV-5086 YGR, 2012 WL 5270125 (N.D. Cal. Oct. 23, 2012) ..........................11

*Sugarland Indus. v. Thomas,*
    420 A.2d 142 (Del. 1980).........................................................................................11, 15, 19

*Tandycrafts, Inc. v. Initio Partners,*
    562 A.2d 1162 (Del. 1989)........................................................................................6, 13, 14

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) ...............................................................................................................10

*United Nat'l Ret. Fund v. Watts,*
    2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005) ...........................................................17

*Weiss v. Swanson,*
    948 A.2d 433 (Del. Ch. Mar. 7, 2008).................................................................................9, 10

**Other Authorities**

Federal Judicial Center,
    MANUAL FOR COMPLEX LITIGATION § 14.121 (2004) ................................................18

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,*
    108 F.R.D. 237 (Oct. 8, 1985) ...............................................................................................16

**Rules**

Fed R. Civ. P. 23.................................................................................................................................7

Plaintiff Marsha Scherer ("Plaintiff") respectfully submits this Memorandum of Law in Support of her Motion for Attorneys' Fees and Reimbursement of Expenses. Pursuant to Local Rule 7.1.1, Plaintiff's Counsel states that they have conferred with Defendants' Counsel regarding the relief requested herein and the parties were unable to reach an agreement.

## PRELIMINARY STATEMENT

For four consecutive years the Board of Directors (the "Board" or the "Defendants") of Diodes Incorporated ("Diodes" or the "Company") awarded stock options worth millions of dollars to the Company's Chief Executive Officer and President, Keh-Shew Lu ("Lu"), that exceeded the annual per-person limit of 100,000 shares allowed under the Company's shareholder-approved 2001 Omnibus Equity Incentive Plan (the "Plan"). At the same time these violations were occurring, Diodes' shareholders were being told that the Board was complying with the Plan.

Plaintiff brought this derivative action on behalf of the Company and sought rescission of the excess stock options and a new election of directors based on truthful disclosures concerning the Board's administration of the Plan. Defendants' response was to surrender unconditionally by providing Plaintiff with all of the relief sought in the Complaint. Plaintiff sought cancellation of the 410,000 *ultra vires* excess stock options that the Board had issued in violation of the Plan; the Board cancelled those options. Plaintiff sought to have the Board disclose its history of stock option plan violations in the then-upcoming 2013 Proxy; the Board disclosed those violations and vowed to comply with the Plan going forward.

The remedial actions Defendants took in response to the litigation have directly conferred a benefit on the Company and its shareholders in the form of an immediate financial benefit of approximately $4.9 million as a result of the cancellation of the 410,000 stock options

1

wrongfully granted to Lu. The result achieved by this litigation will also confer significant long-term benefits to the Company in the form of cost savings that will result from the Board's future compliance with the Plan, which is estimated at $2 million. In addition, Plaintiff has also secured a non-economic benefit for the Company's shareholders -- namely the disclosure of material information concerning Lu's compensation and the Board's administration of the Plan -- that allowed shareholders to cast a fully-informed vote at the 2013 Annual Meeting. For their efforts in securing these substantial benefits, Plaintiff seeks for her counsel an award of reasonable attorneys' fees amounting to 25% of the $6.9 million monetary benefit arising from the cancellation of the excess stock options, $250,000 for the supplemental disclosures, and expenses of $15,045, for an aggregate amount of $1,990,045.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed her derivative Complaint on March 5, 2013, alleging claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment in connection with various stock options that the Board wrongfully granted Lu from 2009 through 2012 in excess of the annual limit in the Plan. Defendants then took remedial action that effectively mooted Plaintiff's various claims for relief. Defendants answered on April 3, 2013 (D.I. 7) and filed a motion for judgment on the pleadings on May 8, 2013. (D.I. 8). The motion for judgment on the pleadings was withdrawn by Stipulation dated June 17, 2013, pursuant to which the parties agreed that in light of Defendants' remedial actions taken in response to the Complaint, the Action would be dismissed following the filing and adjudication of the instant motion for an award of attorneys' fees and expenses. (D.I. 15). The Court so-ordered the Stipulation on June 24, 2013.

## SUMMARY OF ARGUMENT

1.      Plaintiff is entitled to an award of reasonable attorneys' fees and expenses for her counsel on account of the substantial benefit conferred on Diodes and its shareholders as a result of this litigation. The allegations of the Complaint are meritorious, as they would have survived a motion to dismiss in accordance with well-established Delaware law as reflected in cases such as *Sanders v. Wang* and *Ryan v. Gifford*. Defendants have acknowledged that the remedial actions undertaken to moot Plaintiff's claims were prompted by this litigation.

2.      The requested fee award is reasonable. The proposed fee principally consists of 25% of the monetary benefit conferred on the Company through the litigation. Such a fee is consistent with awards made in similar cases and it would fairly compensate Plaintiff's counsel who obtained, for the benefit of the Company and its shareholders, *all* of the relief sought in the Complaint.

## STATEMENT OF FACTS

### A. Plaintiff's Claims

The Board's Compensation Committee granted Defendant Lu, the Company's Chief Executive Officer and President, stock options as part of his annual compensation. (Complaint, filed March 5, 2013 ("Compl.") (D.I. 1) ¶¶ 19, 28-33.) The Company's Plan prohibits stock option grants to individual recipients in excess of 100,000 shares annually. (Compl. ¶ 20.) In each year from 2009 through 2012, the Compensation Committee violated this limit -- granting Lu 222,000 stock options in 2009, and 196,000 stock options in each of 2010, 2011, and 2012. (Compl. ¶¶ 28-33.) In addition, each of the Company's annual proxy statements filed with the United States Securities and Exchange Commission ("SEC") from 2010 through 2012 (a) failed to disclose that the Board had exceeded the Plan's Limit in the prior year and, (b) affirmatively

misrepresented that the annual stock option limit was 337,500 shares (and not 100,000), thus conveying the false impression that the Board had complied with the Limit when making the grants to Lu. (Compl. ¶¶ 34-38.)

In initiating this derivative action on behalf of Diodes, Plaintiff's Complaint identified the excess grants made to Lu in 2009, 2010, 2011, and 2012, and alleged that the Board breached its fiduciary duties and wasted corporate assets by granting such excess stock options and that Lu breached his fiduciary duties and was unjustly enriched as a result of his having accepted them. (Compl. ¶¶ 48-59, 60-65.) In addition, the Complaint alleged that the Plan violations were material, and the Board's failure to disclose the violations constituted an additional breach of fiduciary duty. (Compl. ¶¶ 39, 53.) The Complaint sought, among other things, (1) rescission of the *ultra vires* excess stock options[1]; and (2) an order calling for the re-election of directors on the basis of a complete and accurate proxy statement that properly disclosed the Board's violations of the Plan. (Comp. ¶ 33, Prayer for Relief.)

**B. Defendants' Remedial Measures**

On April 3, 2013, Diodes filed a Form 8-K with the SEC in which it disclosed that, after Plaintiff commenced the Action, the Board's Compensation Committee "reviewed the grants of stock options to [Lu] in 2009, 2010, 2011, and 2012," concluded that the awards exceeded what was permitted by the Plan, and accordingly entered into an agreement with Lu (the "Confirmation Agreement"), pursuant to which Lu and the Company agreed that all of the stock options granted to Lu from 2009 through 2012 that were in excess of the Plan's 100,000 share annual Limit would be cancelled and returned to the Company. All 410,000 excess stock

---

[1] Although the Complaint clearly identified the 2009 Grant and demonstrated that it exceeded the Plan, this award was technically excluded from Plaintiff's claims because it was granted outside the applicable statute of limitations.

options identified by Plaintiff in the Complaint were then cancelled and returned to the Company.

In addition, on April 19, 2013, Diodes filed the 2013 Proxy in connection with the 2013 Annual Meeting. In the 2013 Proxy, the Board sought re-election on the basis of corrective disclosures which (a) identified the existence of Plaintiff's lawsuit and the fact that the Board had granted Lu stock options in 2009, 2010, 2011, and 2012 in excess of the 100,000 annual stock option limit; (b) represented that the annual stock option limit was in fact 100,000 during the calendar years 2009 through 2012 (and not the previously disclosed 337,500); and (c) disclosed the Confirmation Agreement, pursuant to which all 410,000 stock options granted to Lu between 2009 and 2012 in excess of the 100,000 stock option limit were deemed cancelled and returned to the Company. (2013 Proxy, pp. 40, 57)

## ARGUMENT

### I.   Plaintiff Is Entitled to an Award of Reasonable Attorneys' Fees and Expenses In This Action Because It Has Conferred a Substantial Benefit on Diodes and Its Shareholders

#### A. Applicable Legal Standard

In the Third Circuit, attorneys' fee awards in diversity cases are governed by state law. *Sec. Mut. Life Ins. Co. of New York v. Contemporary Real Estate Assoc.*, 979 F.2d 329, 331-32 (3d Cir. 1992). Because Diodes is a Delaware corporation, Delaware law applies to the issue of Plaintiff's counsel's right to attorneys' fees and the method of calculating those fees. *Lewis v. Chiles*, 719 F.2d 1044, 1049 (9th Cir. 1983) (in a derivative suit where plaintiff's action is based on state substantive law, state law legal principles apply with respect to attorneys' fees). However, because "Delaware and federal law are in accord on the issue of derivative counsel fees," Plaintiff also appropriately relies on federal law principles. *In re BEA Sys. Derivative Litig.*, 2009 U.S. Dist. LEXIS 30864, at *7 (N.D. Cal. Mar. 27, 2009) (citation omitted).

In the class and derivative action context, it is well established that attorneys' fees may be awarded when the attorney's efforts have conferred a benefit on members of an ascertainable class. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970); *Kahan v. Rosenstiel*, 424 F.2d 161, 166-67 (3d Cir. 1970). This legal principle -- known as the substantial benefit doctrine -- is based on the equitable proposition that it would "be unjust to require one party to bear the entire expense which necessarily results in a benefit to a large class of persons" and that the beneficiaries of the litigation should instead "share the costs proportionally." *Kahan*, 424 F.2d at 165-66, 167.

The substantial benefit doctrine recognizes that the benefits conferred by representative litigation may be either monetary or non-monetary. *Mills*, 396 U.S. at 395. Monetary benefits include the recovery of money or property wrongfully diverted from the corporation, or measures that lead to monetary savings in the future. *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989) ("[S]uccessful derivative or class action suits which result in the recovery of money or property wrongfully diverted from the corporation, or which result in the imposition of changes in internal operating procedures that are designed to produce such monetary savings in the future, are viewed as fund creating actions."). The creation of monetary benefits or a "common fund" is "a well-established basis for awarding attorneys' fees" in Delaware, entitling counsel "who recovers a common fund for the benefit of persons other than himself or his client . . . to a reasonable attorney's fee from the fund as a whole.'" *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1252-53 (Del. 2012). "When the benefit is quantifiable[,] an award of attorneys' fees [is] based upon a percentage of the benefit." *Id.* at 1259.

Attorneys' fee awards are also warranted where a plaintiff's action leads to "therapeutic relief" that is non-monetary in nature, such as improved corporate governance or enhanced

corporate disclosures. *Mills*, 396 U.S. at 395 ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature"); *Kahan*, 424 F.2d at 166 ("[T]he award of attorney's fees is appropriate to situations where the 'suit has not yet produced and may never produce, a monetary recovery from which the fees could be paid.'").

When defendants take action to moot a plaintiff's derivative claims, as Defendants have done here, the plaintiff is entitled to attorneys' fees if it can be shown that: (1) the suit was meritorious when filed; (2) an action producing a benefit to shareholders was taken by the defendants before a judicial resolution was achieved; and (3) the resulting benefit to shareholders was causally related to plaintiff's lawsuit. *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980). All three elements of this test are satisfied here.

### B. Plaintiff's Action Was Meritorious When Filed

With respect to the first factor of the *Baron* test, courts have defined "meritorious" in the context of mooted actions to mean that the action could have survived a motion to dismiss prior to the actions which mooted the claims. *Kahan*, 424 F.2d at 167 (citing *Chrysler Corp. v. Dann*, 223 A.2d 384 (Del. 1966)). In determining whether a lawsuit is meritorious, "'[i]t is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope.'" *Joy Mfg. Corp. v. Pullman-Peabody Co.*, 729 F. Supp. 449, 454-55 (W.D. Pa. 1989) (citation omitted). As discussed below, this derivative action was undoubtedly meritorious under this standard.

Rule 23.1 requires that a plaintiff in a derivative action must allege either that she has made a demand on the board of directors to take a requested action or, if not, state with particularity the reasons why doing so would be futile. Fed R. Civ. P. 23.1. Where a plaintiff

challenges a board's action or conscious decision to refrain from acting, demand upon that board will be deemed futile if plaintiff alleges facts raising a reasonable doubt that either: (1) a majority of the board is disinterested or independent, or (2) the transaction was a product of the board's valid exercise of business judgment. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Alternatively, when a majority of the Board has not made a decision related to the subject of the derivative suit—either to act or to refrain from acting—demand will be excused if plaintiff's allegations give rise to a reasonable doubt that a majority of the board can exercise its independent and disinterested business judgment in responding to a demand. *Rales v. Blasband*, 534 A.2d 927, 934 (Del. 1993). The requisite doubt to find a director interested under the *Rales* test may be raised by well-pleaded facts demonstrating that a director faces a substantial likelihood of personal liability. *Conrad v. Blank*, 940 A.2d 28, 37 (Del. Ch. 2007).

In alleging that the Board breached its fiduciary duties by granting Lu stock options in excess of the Plan's annual per-individual limit in each of 2009, 2010, 2011 and 2012, Plaintiff pointed to both an express and unambiguous provision in the Plan that established an annual limit and the specific stock option grants that exceeded that limit for four consecutive years. (Compl. ¶¶ 20, 23-33.) These allegations suffice to excuse demand under *Aronson*. Indeed, the Delaware Court of Chancery addressed an almost identical issue in *Sanders v. Wang*, and concluded that an "allegation that a board of directors awarded…more shares than a stock plan expressly authorized sufficiently establishes [a] claim[] for…a breach of fiduciary duty." 1999 Del. Ch. LEXIS 203, at *2 (Nov. 8, 1999). The underlying rationale for this conclusion is that where a board exceeds an unambiguous limitation on its authority under a shareholder-approved compensation plan, the business judgment rule does not apply and demand on such a board is therefore deemed futile. *Id.* at *13-15; *see also Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch.

Mar. 7, 2008) (concluding that although compensation decisions are typically protected by the business judgment rule, this protection only exists "when the terms of the plan at issue are adhered to."); *Ryan v. Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007) ("[t]he Board ha[s] no discretion to contravene the terms of [a] stock option plan."); *California Pub. Employees' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *10-11 (Del. Ch. Dec. 18, 2002) (holding demand excused under the second prong of *Aronson* where plaintiff alleged that the defendant board's repricing of stock options was forbidden by the terms of the shareholder-approved stock option plan).

This case involves the same exact scenario which led the Delaware Court of Chancery to conclude that demand was excused in *Sanders*, *Weiss*, *Ryan* and *Coulter*, and accordingly demand was likewise excused here.

Alternatively, Plaintiff would also satisfy the demand futility test under *Rales*. 634 A.2d at 934. On this analysis, demand is indisputably futile as to Lu, the recipient of the challenged awards, since he has a "strong financial incentive to maintain the status quo by not authorizing any corrective action that would cause [him] to disgorge improperly obtained profits," and cannot possibly be deemed disinterested. *Conrad*, 940 A.2d at 38 (holding that demand is futile with respect to a director who received challenged awards granted in violation of a shareholder-approved plan). Additionally, demand is excused as to Defendants Raymond Soong, L.P. Hsu, and Michael K.C. Tsai, the members of the Compensation Committee who approved the excess stock option grants to Lu. Allegations that a director has approved compensation grants in violation of a shareholder-approved plan successfully establishes a substantial likelihood of liability with respect to that director, rendering him incapable of properly exercising his independent and disinterested business judgment in responding to a demand. *Conrad*, 940 A.2d

9

at 38-41; *Ryan*, 918 A.2d at 355-56. Therefore, demand is likewise futile as to Defendants Soong, Hsu, and Tsai.

Since Lu and Messrs. Soong, Hsu and Tsai together constitute four members of the seven member Board, Plaintiff has raised a reasonable doubt as to the interestedness and independence of more than half of the Board and therefore satisfied the *Rales* standard. Because Plaintiff has sufficiently alleged facts establishing demand futility under both the *Aronson* and *Rales* tests, she has established much more than the requisite "reasonable hope" that her breach of fiduciary duty claims would have withstood a motion to dismiss. *Chrysler Corp.*, 223 A.2d at 387.

Plaintiff's disclosure claims would likewise have survived a motion to dismiss under Rule 12(b)(6). Plaintiff alleged that the Board breached its fiduciary duty of candor by failing to disclose the Plan violations in the Company's 2010, 2011, and 2012 proxy statements. Directors of a Delaware corporation are under "a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994). Under Delaware law, omitted information is material if it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available," and that there is a "substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *In re Tele-Communications, Inc. S'holders Litig.*, C.A. No. 16470, 2005 WL 3642727, at *3 (Del. Ch. Dec. 21, 2005) (*quoting TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

As many courts have recognized, the fact that a board has violated a shareholder-approved compensation plan is necessarily material to the company's shareholders, particularly where the board in question seeks reelection or other shareholder action. *Weiss*, 948 A.2d at 449

(concluding that directors' practice of granting options in violation of a stock plan was material information for a shareholder in "deciding whether . . . to reelect board members[.]"); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1015 (N.D. Cal. 2007) (holding that board's false representation in proxy statement to the effect that board was complying with a stock option plan was material); *accord Britton v. Parker*, 2009 WL 3158133, at *8 (D. Colo. Sept. 23, 2009) (plan violations material in context of director election); *St. Louis Ret. Sys. v. Severson*, C.A. No. 12-CV-5086 YGR, 2012 WL 5270125, at *2 (N.D. Cal. Oct. 23, 2012) (plan violations material in context of proposed amendment to stock plan). Accordingly, Plaintiff has adequately stated a claim for breach of fiduciary duty of candor that would have survived a motion to dismiss.

### C. This Action Produced a Benefit to Diodes and Its Shareholders Before a Judicial Resolution Was Required

No doubt recognizing that Plaintiff's claims would have withstood any motion to dismiss, Defendants instead decided to effectively moot Plaintiff's claims for relief before any judicial resolution of Plaintiff's allegations was necessary. The resulting benefit was immediate and substantial. First, the cancellation, and Lu's surrender, of the 410,000 excess stock options conferred a substantial monetary benefit on Diodes. *See, e.g., Ryan v. Gifford*, 2009 Del. Ch. LEXIS 1, at *40 (Jan. 2, 2009); *In re UnitedHealth Group, Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1159 (D. Minn. 2009). Where, as here, a benefit arises from the restoration of stock options improperly granted, "the benefit to the corporation is measured in dollars and there is a direct causal relationship between the actions of counsel and creation of the 'entire' fund or benefit conferred." *Sugarland Indus. v. Thomas*, 420 A.2d 142, 152 (Del. 1980) (denying reargument on fee award); *accord Moses v. Pickens*, 1982 Del. Ch. LEXIS 486, at *2 (Nov. 10, 1982) (approving an award of fees and expenses to derivative plaintiff's counsel for entering into settlement that consisted of the surrender of stock options).

11

Diodes has itself represented that the cancelled and surrendered stock options had a grant date fair value of approximately $4.9 million.[2]   Benefits of this sort have repeatedly been recognized as creating a common fund which justifies an award of attorneys' fees. *See, e.g., Ryan*, 2009 Del. Ch. LEXIS 1 at *41 (finding that the cancellation of improperly granted stock options constitutes a significant benefit to the corporation warranting an award of fees to plaintiff's attorneys); *Moses,* 1982 Del. Ch. LEXIS 486; *In re UnitedHealth Group,* 631 F. Supp. 2d at 1159; *Sanders v. Wang*, 2001 Del. Ch. LEXIS 82, at *9-10 (May 24, 2001).

Second, Plaintiff's lawsuit also caused significant long-term benefits to the Company in the form of cost savings that will result from the prevention of future grants of compensation in excess of the Plan's annual limit. Specifically, had Plaintiff had not filed this action, there is no reason to believe that the Board would have complied with the Plan's annual per-person limit at any time in the near future.  Indeed, taking into account Diodes's recent stock option granting practices whereby the Board greatly exceeded the annual limit in each of the past four years, Plaintiff's expert concluded that there was a substantial likelihood that the Board would have continued to grant Lu more than 100,000 stock options for at least another two years.

---

[2] The grant date fair value of the cancelled stock options, as disclosed in the Company's proxy statements are as follows:

| Date of Grant | Excess Stock Options | Grant Date Fair Value per Share | Total Grant Date Fair Value of Excess Options |
|---|---|---|---|
| May 28, 2009 | 122,000 | $9.40 | $1,146,800 |
| May 24, 2010 | 96,000 | $11.88 | $1,140,480 |
| May 26, 2011 | 96,000 | $16.75 | $1,608,000 |
| May 21, 2012 | 96,000 | $10.64 | $1,021,440 |
| **Total** | **410,000** | | **$4,908,174** |

*See* Diodes's Schedule 14A proxy statements filed on April 13, 2010 (p.37), April 15, 2011 (p. 42), April 12, 2012 (p. 42) and Lu's Form 4 filed on May 23, 2012 (Declaration of Brian E. Farnan, Exhibits A-D.).

(Declaration of Brian T. Foley in Support of Plaintiff's Application for Attorneys' Fees and Reimbursement of Expenses, ¶ 11 ("Foley Decl.").)

Accordingly, by initiating this lawsuit and prompting the Board to comply with the Plan, Plaintiff has likely prevented future excessive stock option grants, leading to a costs savings to the Company and its shareholders over the next two years of approximately $2 million. (Foley Decl. ¶ 19.) This long-term benefit likewise justifies an award of attorneys' fees under the substantial benefit doctrine. *See, e.g. Chrysler Corp.*, 223 A.2d at 388-390 (finding that plaintiff was entitled to attorneys' fees in a derivative lawsuit that caused a "change in the [company's] Compensation Plan" which conferred a "long-range benefit" to the company); *Ryan*, 2009 Del. Ch. LEXIS 1 at *41 (measures "designed to prevent future wrongful option grants" constitute a benefit that can be "properly considered by the Court in determining a fee award and in the past has served as the sole basis for a fee award."); *Tandycrafts, Inc.* 562 A.2d at 1164-1165 (recognizing that derivative lawsuits that "result in the imposition of changes in internal operating procedures that are designed to produce [] monetary savings in the future[] are viewed as fund creating actions" that justify an award of attorneys' fees).

Third, the Company's shareholders received an additional substantial benefit as a result of the corrective disclosures prompted by this litigation. Specifically, in the 2013 Proxy Diodes' shareholders received for the first time truthful information concerning Lu's compensation and the Board's administration of the Plan. There can be no question such disclosures were material. Indeed, the Company's shareholders voiced their displeasure with respect to Defendant Soong, the Chairman of the Compensation Committee during the four-year period in which the Plan was violated. Soong received 8,317,620 withheld votes at the 2013 Annual Meeting, which was by far the highest number among all directors. Accordingly, the disclosures concerning Plan

13

violations caused by Plaintiff's lawsuit produced a substantial benefit to the Company's shareholders. *Tandycrafts Inc.*, 562 A.2d at 1164-65 (recognizing that a corporate benefit includes "a heightened level of corporate disclosure[.]"); *see also In re Talley Indus., Inc. S'holders Litig.*, C.A. No. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998) ("the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.").

### D. The Resulting Benefits Were Caused By Plaintiff

When a defendant takes action after a lawsuit that moots a claim, "the defendant . . . has the burden of showing that there was no causal connection between the two in order to defeat the stockholders claim for legal fees and expenses." *Joy Mfg. Corp.*, 729 F. Supp. at 460. In order to rebut this presumption, Defendants "must show that the benefit is attributable to other causes." *Franklin Balance Sheet Inv. Fund, et al. v. Crowley*, 2007 WL 2495018, at *7 (Del. Ch. Aug. 30, 2007).

Here, Defendants have acknowledged that Plaintiff's lawsuit was the cause of the stock option cancellation. Specifically, in its 8-K filing the Company disclosed that, in response to the Complaint, the Board "reviewed the grants of stock options" to Lu from 2009-2012, and approved a "Confirmation Agreement in which the Company and [] Lu" agreed that all grants to Lu that exceeded the limit would "be amended to reflect the foregoing 100,000 share limitation." Just three weeks later, the Company disclosed this same information in the 2013 Proxy; *see also* Def's Motion for Judgment on Pleadings (D.I. 9) at 1 ("Plaintiff's derivative claims . . . have all been rendered moot by reason of defendants' subsequent actions addressing the alleged wrongs

and effectively delivering to the Company and its stockholders the remedies plaintiff demands.");

June 17, 2013 Stipulation and [Proposed] Order (D.I. 15.).

## II.    The Requested Attorneys' Fees and Expenses Are Reasonable

As demonstrated above, an award of reasonable attorneys' fees and expenses is

warranted. The next inquiry is the appropriate amount of the award, which courts determine by

considering and weighing the following factors: (1) the results achieved; (2) the time and effort

of counsel; (3) the relative complexities of the litigation; (4) any contingency factor; and (5) the

standing and ability of counsel. *Sugarland*, 420 A.2d at 149 (Del. 1980). Application of these

factors supports the requested award.

Courts have consistently recognized that the result achieved is the primary factor courts

should consider in making a fee award. *See, e.g., Ams. Mining Corp.*, 51 A.3d at 1254-55 ("most

important" *Sugarland* factor is the benefit achieved and "courts have assigned the greatest weight

to the benefit achieved."); *Crowley*, 2007 WL 2495018, at *8; *Sanders*, 2001 Del. Ch. LEXIS, at

*9.[3]

In common fund cases, such as this one, "courts calculate fees based on a reasonable

percentage of the common fund." *Ams. Mining Corp.* at 1253. Courts have repeatedly approved

the percentage-of-recovery method in common fund cases. *See, e.g., In re Cendant Corp.*, 232 F.

Supp. 2d 327, 337 n.1 (D.N.J. 2002) ("[P]laintiffs in a derivative action may recover attorneys'

fees from the award obtained through prosecuting the case as in a more traditional common-fund

suit, i.e. a class action.") (citing *Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978)); *see also*

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 242 (Oct.

---

[3] The size of the fund created and number of persons benefitted is also an important factor among the considerations used by federal courts in the Third Circuit. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336 (3d Cir. 1998).

8, 1985) (fee awards in common fund cases have historically been computed based upon a percentage of the fund).

      As a result of Plaintiff's efforts, every single one of the 410,000 stock options granted to Lu in violation of the Plan was returned to the Company. Consequently, the Company received an immediate monetary benefit of $6.9 million: approximately $4.9 million as a result of the cancellation of the excess stock options, and expected cost savings of approximately $2 million as a result of the prevention of future wrongful option grants. Plaintiff achieved total recovery on her claims and could not have fared better had the action proceeded to trial.

      The fee request of 25% of the common fund created is in line with several awards in cases where the benefits consisted of cancelled stock awards. *See, e.g.,* Transcript of Hearing on Proposed Settlement and Request for Attorneys' Fees, *In re Genentech, Inc. S'holders Litig.*, Cons. C.A. No. 14265 (Del. Ch. Aug. 26, 1996) (awarding fees of 33% of the benefit obtained through the renegotiation of option terms, plus $500,000 in fees for non-quantifiable benefits) (attached as Exhibit A to the Declaration of Eduard Korsinsky, dated July 29, 2013 ("Korsinsky Decl.")); Transcript of Telephonic Settlement Hearing, *In re United Therapeutics Corp. Derivative Litig.*, Cons. C.A. No. 4946 (Del. Ch. Jan. 21, 2011) (awarding $1.6 million in attorneys' fees for settlement involving surrender of stock options with estimated value of $6.4 million, equivalent to 25% of the value of the surrendered stock options) (Korsinsky Decl., Exhibit B); *Moses*, 1982 Del. Ch. LEXIS 486 at *2 (awarding fees and expenses to plaintiff's counsel amounting to 21% of the value of options surrendered to the company); *Sanders*, 2001 Del. Ch. LEXIS, at *9-10 (awarding counsel a fee amount constituting 20% of the shares returned to the company by defendants).

Future cost savings caused by Plaintiff's litigation efforts likewise support the requested award. *Chrysler Corp.*, 223 A.2d at 388-390 (awarding derivative counsel $450,000 in fees for conferring a benefit consisting of change in the company's compensation plan that will "benefit [the company] in the long run"); *United Nat'l Ret. Fund v. Watts*, 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005) (awarding a fee of $9.2 million for therapeutic relief and noting that the award was based on "the great benefit conferred upon [the corporation] as a result of the new corporate governance principles provided for in the settlement agreement" that "will serve to prevent and protect Shell from the reoccurrence of certain alleged wrongdoings.")

Plaintiff's fee request of 25% of the common fund is within the typical range awarded by courts in this circuit using the percentage-of-recovery method. *In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (awarding 30%); *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *14 (E.D. Pa. Jan. 4, 2001) (30%); *In re Ravisant Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *10 (E.D. Pa. Apr. 18, 2005) (approving fee award of 33% of $7 million settlement); *In re ATI Techs., Inc. Sec. Litig.*, No. 01-2541, 2003 U.S. Dist. LEXIS 7062, at *17 (E.D. Pa. Apr. 28, 2003) (awarding 30%); *In re EquiMed, Inc. Sec. Litig.*, No. 98-cv-5374 (NS), 2003 U.S. Dist. LEXIS 2998, at *11 (E.D. Pa. Mar. 3, 2003) (awarding 33-1/3%); *In re Cell Pathways, Inc.*, No. 01-CV-1189, 2002 U.S. Dist. LEXIS 18359, at *43 (E.D. Pa. Sept. 24, 2002) (awarding 30%); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (awarding 33-1/3%); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 U.S. Dist. LEXIS 569, 2008 WL 63269, at *5-6 (E.D. Pa. Jan. 3, 2008) (approving an award of 33.33% of the settlement fund). In addition, a fee award of 25% is within the range of fees awarded by courts nationwide on a percentage of the benefit basis. *See, e.g., Ams. Mining Corp.*, 51 A.3d at 1260 ("A recent study by the economic consulting firm National

Economic Research Associates ... reports that median attorneys' fees awarded from settlements in securities class actions are generally in the range of 22% to 30% of the recovery until the recovery approaches approximately $500 million."); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 14.121 at 187 (2004) ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund.").

Plaintiff also secured enhanced corporate disclosures that permitted stockholders to cast an informed vote at the 2013 Annual Meeting. Plaintiff's fee request of $250,000 as a result of obtaining these disclosures is consistent with other awards for material disclosures. *See, e.g., In re Sauer-Danfoss Inc. S'holders Litig.*, C.A. No. 5162-VCL, 2011 Del. Ch. LEXIS 64, at *54-55 (Del. Ch. Apr. 29, 2011) (concluding that "meaningful disclosures" can warrant fees awards ranging from $400,000 to $500,000 and mentioning that disclosures concerning issues such as the "election of directors that lacks any explicit language to quantifiable value[]" can constitute "meaningful disclosures."); Transcript of Settlement Hearing, *In re Staples, Inc. S'holders Litig.*, C.A. No. 18784 (Del. Ch. Aug. 16, 2001) (awarding $2.75 million in attorneys' fees where the benefit consisted of rescission of contract for the purchase of common stock and related disclosures) (Korsinsky Decl., Exhibit C); Transcript of Hearing on Plaintiffs' Counsel's Application for Attorneys' Fees and Expenses and Rulings of the Court at 64, *In re Zenith Nat'l Ins. Corp. S'holders Litig.*, C.A. 5296-VCL (Del. Ch. July 26, 2010) (awarding $400,000 in attorneys' fees for "one major disclosure" that provided stockholders with an "informational benefit") (Korsinsky Decl., Exhibit D); Transcript of Settlement Hearing and Ruling at 56 and 59, *IBEW Local Union 98 v. Noven Pharmaceuticals Inc.*, C.A. 4732-CC (Del. Ch. Dec. 8, 2009) (awarding $450,000 in attorneys' fees for the "therapeutic" and "informational benefit"

stemming from one "meaningful disclosure" in connection with stockholder vote) (Korsinsky Decl., Exhibit E.).

Turning to the lesser *Sugarland* factors, the contingent nature of the representation and the time and effort of counsel also support the fee request. Plaintiff's Counsel undertook this litigation on a contingency fee basis and assumed the legitimate risk that "it would be unable to successfully prosecute its complex derivative action." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 339 (D.N.J. 2002); *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at * 6 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award.") Plaintiff's counsel has worked approximately 379 hours on this case and incurred $15,045 in expenses on a wholly contingent basis. As discussed above, Defendants acted swiftly to moot Plaintiff's claims shortly after the Complaint was filed, which certainly affected the hours worked on the case, but on the other hand provided the Company with substantial monetary benefits valued at approximately $6.9 million. Plaintiff's counsel should not be punished for having achieved a quick victory. *See Ams. Mining Corp.*, 51 A.3d at 1257-58 (noting that the Delaware Supreme Court has rejected the use of time expended as the principal basis for determining fees and holding that the "benefit achieved by the litigation is the 'common yardstick by which a plaintiff's counsel is compensated in a successful derivative action.'").

Finally, shareholder derivative litigation is a highly complex and specialized field, a factor that supports Plaintiff's request. *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394 at *8. Levi & Korsinsky has a long history of successfully prosecuting complex derivative and class actions, and has earned the praise of numerous courts along the way. (*See* Firm Resume of Levi & Korsinsky, attached as Exhibit F to the Korsinsky Decl.) The

attorneys of Farnan LLP have extensive experience in shareholder litigation and in Delaware courtrooms as trial lawyers.

In sum, after consideration of all the factors enumerated above, and in light of the significant financial benefits received by the Company and its shareholders as a result of this Action, the Court should grant Plaintiff the relief requested herein.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court award Plaintiff's counsel attorneys' fees and expenses in the aggregate amount of $1,990,045.

Dated: July 29, 2013                Respectfully submitted,

                 /s/ Brian E. Farnan
                Brian E. Farnan (Bar No. 4089)
                Michael J. Farnan (Bar No. 5165)
                FARNAN LLP
                919 N. Market Street, 12th Floor
                Wilmington, Delaware 19801
                Tel: (302) 777-0300
                Fax: (302) 777-0301
                bfarnan@farnanlaw.com

                Of Counsel:

                LEVI & KORSINSKY, LLP
                Eduard Korsinsky
                Steven J. Purcell
                30 Broad Street, 24th Floor
                New York, New York 10004
                Tel: (212) 363-7500
                Fax: (212) 363-7171

                *Attorneys for Plaintiff*

20