## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARSHA SCHERER, derivatively on behalf
DIODES INCORPORATED,

        Plaintiff,

    v.

KEH-SHEW LU, RAYMOND SOONG, C.H.
CHEN, MICHAEL R. GIORDANO, L.P.
HSU, JOHN M. STITCH and MICHAEL K.C.
TSAI,

        Defendants,

-and-

DIODES INCORPORATED, a Delaware
Corporation,

        Nominal Defendant.

Case No. 13-cv-358 (GMS)

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION
## FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Date: October 11, 2013

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com

Of Counsel:
Eduard Korsinsky
Steven J. Purcell
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT......................................................................................................................2

    I.    Defendants' Belated Attempt to Argue Demand Futility Fails. ...........................2

    II.    Defendants Unsuccessfully Attempt to Deny The Benefits Created By This Litigation........................................................................................................2

    III.    Defendants' Purported Computation of a "Reasonable" Attorneys' Fee Is Unsupported By Law. ......................................................................................8

CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Ams. Mining Corp. v. Theriault,*
    51 A.3d 1213 (Del. 2012) ...................................................................................12

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ....................................................................................5

*Cal-Maine Foods, Inc. v. Pyles,*
    858 A.2d 927 (Del. 2004) ..................................................................................11

*Chrysler Corp. v. Dann,*
    223 A.2d 384 (Del. 1966) ....................................................................................9

*Greenfield v. Frank B. Hall & Co.,*
    1992 Del. Ch. LEXIS 207 (Del. Ch. 1992) ........................................................6

*In re Coleman Co. S'holders Litig.,*
    750 A.2d 1202 (Del. Ch. 1999) .........................................................................11

*In re Ikon Office Solutions v. Stuart,*
    194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................11

*In re Sauer-Danfoss Inc. S'holders Litig.,*
    65 A.3d 1116 (Del. Ch. 2011) ..................................................................6, 10, 12

*In re Unitedhealth Group S'holder Derivative Litig.,*
    631 F. Supp. 2d 1151 (D. Minn. 2009)...............................................................8

*Kaplan v. Peat, Marwick, Mitchell & Co.,*
    540 A.2d 726 (Del. 1988) ....................................................................................5

*La. Emp. Ret. Sys. v. Citrix Sys., Inc.,*
    2001 Del. Ch. LEXIS 115 (Del. Ch. Sept. 19, 2001) ......................................8, 9

*McAfee v. Met. Life Ins. Co.,*
    625 F. Supp. 2d 956 (E.D. Cal. 2008) ................................................................8

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (U.S. 1970) .................................................................................6, 9

*Moses v. Pickens,*
    1982 Del. Ch. LEXIS 486 (Del. Ch. Nov. 10, 1982) .........................................8

*Ryan v. Gifford,*
    2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) .............................................5, 7

*Sanders v. Wang,*
    2000 WL 34015564 (Del. Ch. June 22, 2000).....................................................8

*Seinfeld v. Coker,*
    847 A.2d 330 (Del. Ch. 2000) ...........................................................................11

*Sugarland Indus. v. Thomas*,
    420 A.2d 142 (Del. 1980) ................................................................................5, 7

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) .............................................................................6, 10

*Zimmerman v. Crothall*,
    62 A.3d 676 (Del. Ch. 2013) ...............................................................................8

**Statutes**

Fed. Rule Civ. P. 23.1 .................................................................................................12

**Other Authorities**

Dodd-Frank Act,
    Pub. L. No. 111-203, 124 Stat. 1376, § 953(b)(a) ....................................11

Federal Judicial Center,
    MANUAL FOR COMPLEX LITIGATION § 14.121 (2004) ...................................11

## INTRODUCTION

At the outset of this case Defendants chose to provide *all* of the essential relief sought in the Complaint, a decision they now ask the Court to believe was based on meritless claims subject to dismissal. Indeed, Defendants go so far as to argue that, in bringing this action and thereby prompting Defendants' compliance with Diodes' shareholder-approved compensation plan and the return of millions of dollars of compensation to which Diodes' CEO was not entitled, Plaintiff has somehow done a disservice to the Company.

Defendants' position is not credible and ignores what transpired in this case. In situations where millions of dollars of a CEO's compensation is at issue, companies do not simply immediately fold in the face of an individual shareholder plaintiff's allegations. Here, Defendants canceled the hundreds of thousands of stock options that Plaintiff alleged exceeded an unambiguous limitation in Diodes' shareholder-approved compensation plan for one reason and one reason only -- they recognized Plaintiff was right and that they had no defense to this action.

Defendants now disparage the very litigation to which they capitulated, arguing that the suit was not meritorious and that the litigation did not create a common fund or otherwise confer any benefit on the Company. Defendants also chastise Plaintiff for supposedly not prosecuting an action that Defendants had elected to moot at an early stage. All of Defendants' various arguments have the same objective -- to deny Plaintiff's counsel fair compensation for litigating a successful derivative action that conferred a substantial financial benefit on the Company and its shareholders. Defendants' arguments fail for a variety of reasons, not the least of which is that both the United States Supreme Court and the Delaware Supreme Court recognize that the recovery on behalf of the Company of millions of dollars in excess compensation is a benefit that warrants an award of reasonable attorneys' fees.

1

## ARGUMENT

I.    **Defendants' Belated Attempt to Argue Demand Futility Fails.**

As Plaintiff established in her Motion for Attorneys' Fees ("Motion"), the derivative claims alleged in the Complaint would have survived any motion to dismiss Defendants might have brought on demand futility or other grounds. (Motion at 7-11.)

First, demand is excused where, as here, a board violates an express and unambiguous provision in a shareholder-approved compensation plan. (*Id.*) Recognizing that the case law is decidedly against them on this point, Defendants present a four-sentence argument that Plaintiff somehow has not plead demand futility "with particularity." (Defendants' Opposition Brief ("Opp.") at 11.) According to Defendants, their "prompt response" to the lawsuit "confirm[s] that demand would not have been futile." (*Id.*) This hindsight-based argument is wrong as a matter of law -- demand futility is assessed as of the time the complaint is filed. *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 810 (Del. 1984) ("[F]utility is gauged by the circumstances existing at the commencement of a derivative suit.").[1]

II.    **Defendants Unsuccessfully Attempt to Deny the Benefits Created By This Litigation.**

Defendants' first and most telling argument in opposition to Plaintiff's Motion is the unsupported suggestion that, in bringing this action to enforce the limitations on stock-based compensation in the Company's shareholder-approved plan, Plaintiff has somehow *harmed* the Company. (Opp. at 1; Prowse Dec. ¶¶ 55, 60.) Defendants never explain how that could possibly be so; beyond that, the notion that requiring compliance with a shareholder-approved plan

---

[1] Defendants' reliance on *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1988), is unavailing. *Kaplan* simply provides that "a corporation's failure to object to a suit brought on its behalf must be viewed as an approval for the shareholders' capacity to sue derivatively." *Id.* at 731.

somehow is "detrimental" to the Company flies in the face of Delaware law, public policy and equity.

In a further attempt to deny Plaintiff credit for the success of this litigation, Defendants interpose a purported distinction between benefits to the Company and benefits to its shareholders, and contend that Plaintiff cannot recover a fee for the latter. (Opp. at 11-12.) This artificial distinction has no support in the law. In a shareholder derivative action, such as this one, courts calculate attorneys' fees based on the benefit to *both* shareholders and the Company. *Sugarland Indus. v. Thomas*, 420 A.2d 142, 147 (Del. 1980) (explaining that the "results accomplished for the benefit of all shareholders of [a company] . . . is the common yardstick by which a plaintiff's counsel is compensated in a successful derivative action" (citation omitted)); *Ryan v. Gifford*, 2009 Del. Ch. LEXIS 1, at *41 (Del. Ch. Jan. 2, 2009) ("The benefit achieved for the Company and the shareholders should be accorded the greatest weight in determining the fees to be awarded [in a derivative action]."); *see also Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164, 1166-67 (Del. 1989) (affirming award of attorneys' fee based on benefit to the shareholders where the plaintiff sued as an individual). Indeed, the cases Defendants cite in their own brief likewise reject such a distinction. *See Greenfield v. Frank B. Hall & Co.*, 1992 Del. Ch. LEXIS 207, at *8-9 (Del. Ch. 1992) (attorneys' fees may be awarded "when a corporation (whether as a stockholder derivative or class action, or as an individual action), results in the *conferring of a benefit to the corporation or its stockholders*" (emphasis added)); *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1123 (Del. Ch. 2011) ("When a plaintiff pursues a cause of action relating to the internal affairs of a Delaware corporation and generates benefits for the corporation or its stockholders, Delaware law calls for the plaintiff to receive an award of attorneys' fees and expenses."). In this connection, Defendants' citation to *Mills v. Elec. Auto-*

3

*Lite Co.*, 396 U.S. 375 (U.S. 1970), is self-defeating. Far from supporting Defendants' position, in *Mills*, the Supreme Court approved this very type of derivative case as one warranting the payment of an attorneys' fee. *Id.* at 394 (approving of attorneys' fee awards in cases brought by shareholders "complaining that shares of their corporation had been issued wrongfully")

Defendants' argument that the present action is not a common fund case lacks merit. (Opp. at 12-17.) Defendants do not and cannot dispute that Plaintiff's lawsuit has resulted in the cancellation of hundreds of thousands of stock options wrongfully granted to Lu over four years in excess of the 100,000 share limit in the Plan. According to *the Company's own method of valuation*, which it used consistently in its disclosures to shareholders,[2] these cancelled options had a value of approximately $4.9 million. (Motion at 11-12.) Indeed, contrary to Defendants' position, because Diodes itself valued the excess shares at $4.9 million, there must have been a corresponding $4.9 million charge to earnings, spread over the applicable 4-year vesting periods for the options in question. (Declaration of Brian T. Foley in Support of Plaintiff's Reply, ¶ 12.) As such, when the excess 2009-2012 options were cancelled, the Company was entitled to reverse the earnings charges already taken on the excess options and to avoid the scheduled earnings charges not taken -- resulting in a total earnings charge reversal/savings of $4.9 million. (*Id.* ¶ 17.)

Nor can Defendants dispute what the Delaware Supreme Court said in *Sugarland*: "[W]here directors [are] required to restore to the corporation money improperly paid or *stock options improperly given*[,] . . . *the benefit to the corporation is measured in dollars and there is a direct causal relationship between the actions of counsel and creation of the 'entire' fund or*

---

[2] *See* Diodes's Schedule 14A proxy statements filed on April 13, 2010 (p. 37), April 15, 2011 (p. 42), April 12, 2012 (p. 42) and Lu's Form 4 filed on May 23, 2012 (Declaration of Brian E. Farnan, Exhibits A-D).

*benefit conferred.*" 420 A.2d at 152 (emphasis added). Thus, Defendants seek to distinguish some of the other cases Plaintiff relied on in her Motion by noting that some of these cases involved a cash payment in addition to the cancellation of options. (Opp. at 12-13.) However, it is hard to understand how this fact changes the analysis. A cash payment is not an essential element to a finding of a corporate benefit. Indeed, while Defendants claim that the court in *Ryan* "gave little weight" to one defendant's decision to surrender his rights to certain equity grants in awarding attorneys' fees, Defendants do not suggest that this proposition is supported by the case itself, as they provide no citation for it. (*Id.* at 13.) This is not surprising, as the *Ryan* court expressly based the award on "the cash recovery of over $28 million" *and* "the cancellation, re-pricing, and surrender of thousands of stock options and for significant corporate governance reforms designed to prevent future wrongful option grants." *Ryan*, 2009 Del. Ch. LEXIS 1, at *41. Defendants' attempts to distinguish Plaintiff's other cases fail for the same essential reason. (Opp. at 12-13, n.9.)[3]

In stark contrast to the cases involving rescission of stock-based awards made under a shareholder-approved compensation plan on which Plaintiff relies, Defendants cite a series of inapposite cases dealing with disability benefits under an insurance policy (*McAfee v. Met. Life Ins. Co.*, 625 F. Supp. 2d 956 (E.D. Cal. 2008)), warrants in a private company (*Zimmerman v.*

---

[3] Defendants simply cannot dispute that in each of these cases the court awarded attorneys' fees based in part on cancelled stock awards which formed part of a common fund. *See In re Unitedhealth Group S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1155 (D. Minn. 2009) (awarding attorneys' fees where, pursuant to the settlement, the defendant transferred stock and options, with "a presumptive . . . value ranging from $ 499.3 million (Black Scholes) to $ 495.1 million (intrinsic)"); *Sanders v. Wang*, 2000 WL 34015564, at *3 (Del. Ch. June 22, 2000) (awarding attorneys' fees "in the amount and form of 20% of the number of shares to be returned to Computer Associates pursuant to the Settlement, or a total of *900,000* shares of Computer Associates' common stock, which fees and expenses the Court finds to be fair and reasonable"); *Moses v. Pickens*, 1982 Del. Ch. LEXIS 486, at *1-2 (Del. Ch. Nov. 10, 1982) (awarding attorneys' fees where the defendant surrendered an option to purchase 1,200,000 shares worth approximately $4 million).

*Crothall*, 62 A.3d 676 (Del. Ch. 2013)), and the withdrawal of an amendment to a compensation plan (*La. Emp. Ret. Sys. v. Citrix Sys., Inc.*, 2001 Del. Ch. LEXIS 115 (Del. Ch. Sept. 19, 2001)).

While Defendants' claim that *Citrix* is the "closest case," (Opp. at 13), there are no meaningful similarities between this case and *Citrix*. *Citrix* involved the withdrawal of an amendment to a compensation plan that would have increased the aggregate amount of stock options that could be issued under the company's plan by approximately ten million shares. 2001 Del. Ch. LEXIS 115, at *2, 20-21. Unlike here, the plaintiff in *Citrix* did not challenge any particular stock option awards because no awards had been made pursuant to the challenged amendment. *Id.* at *25. In contrast to the present action where Plaintiff's suit resulted in the cancellation of *actual*, *unauthorized* awards, the *Citrix* plaintiff argued that, by contributing to the withdrawal of the amendment, the litigation had made it impossible for the company to grant any stock options pursuant to that amendment, resulting in a benefit in the form of the prevention of dilution that occurs when stock options are granted. *Id.* at *22-23. Plaintiff's argument for attorneys' fees was based on its expert's independent Black-Scholes valuation of the *hypothetical issuance* of every single stock option that the company *might have been issued* in the future *if* the amendment continued in effect and thus the value of the dilution that did not occur. *Id.* at *23-24. This is a tenuous argument indeed, as the company had in fact not issued a single option under the amendment, much less the over ten million options on which plaintiff was basing its request for attorneys' fees. *Id.* at *24. Unsurprisingly, the court rejected plaintiff's argument on the basis that, "[a]bsent issuance of any of the additional options, plaintiff's attempt to accurately calculate the dilutive costs associated with that issuance is premature and speculative." *Id.* at *25. That situation is not comparable to this case where Plaintiff's fee request is based on (i) the cancellation of 410,000 real stock options that were actually issued in violation of Diodes'

6

shareholder-approved Plan for four consecutive years; and (ii) the Company's *own valuation* of those options as reported to shareholders.

Moreover, Defendants' attack the portion of Plaintiff's fee request based on the cost savings associated with compliance with the Plan on a going forward basis. (Opp. at 15.) However, courts routinely recognize that plaintiffs are entitled to attorneys' fees where plaintiff's action leads to such "therapeutic relief." *Mills*, 396 U.S. at 395 ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature."); *Chrysler Corp. v. Dann*, 223 A.2d 384, 388-390 (Del. 1966) (awarding derivative counsel $450,000 in fees for conferring a benefit consisting of change in the company's compensation plan that will "benefit [the company] in the long run"). Defendants offer not a single reason to question Plaintiff's essential conclusion that this litigation caused the Company to avoid the costs of likely Plan violations in the immediate future.

Finally, Defendants take issue with the disclosures Plaintiff secured through this litigation, claiming that Plaintiff's counsel is not entitled to attorneys' fees based on the disclosures which only benefited the shareholders and not the Company itself. Again, no such distinction exists in this context. *See, e.g.*, *Tandycrafts Inc.*, 562 A.2d at 11645 (recognizing that a corporate benefit includes "a heightened level of corporate disclosure"); *In re Sauer-Danfoss Inc.*, 65 A.3d at 1136 ("Whenever a plaintiff generates enhanced disclosure in connection with stockholder action, the benefit is conferred.").

Moreover, although Defendants claim that the disclosures did not include any "new information," (Opp. at 18) they do not point to any earlier public filing in which it was disclosed that: (a) the Board had granted Lu stock options in 2009, 2010, 2011, and 2012 in excess of the

Plan; (b) the annual stock option limit in the Plan was 100,000 during the calendar years 2009 through 2012 (and not the previously disclosed 337,500); or (c) that the Company and Lu had entered into the Confirmation Agreement, pursuant to which all 410,000 stock options granted to Lu between 2009 and 2012 in excess of the 100,000 stock option limit were deemed cancelled and returned to the Company. (*See* Diodes's Schedule 14A proxy statement filed on April 19, 2013, pp. 40, 57.) Similarly, Defendants claim that the information in the disclosures "lack[ed]" importance, but do not explain why they believe that to be the case. (Opp. at 18.) As the many cases Plaintiff cited in her opening brief attest, the disclosures obtained by Plaintiff are clearly material, so much so that courts have made similar disclosures the basis for injunctive relief. (Motion at 10-11, 13-14.)[4]

### III. Defendants' Purported Computation of a "Reasonable" Attorneys' Fee Is Unsupported By Law.

As Plaintiff demonstrated in her Motion, 25% of the common fund created by the litigation is well within the typical range awarded by courts using the percentage-of-recovery method. (Motion at 17-18.) While Defendants insist that such an award should not issue in this case, it is telling that they do not address, much less contradict, the fact that the Manual for Complex Litigation itself expressly states that "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund." Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 14.121 at 187 (2004). It is similarly telling that, with one exception, Defendants do not address any of the cases establishing 25% as being within the typical range

---

[4] In addition, Defendants' suggestion that information regarding Lu's compensation is not important is not supported by the law, as the Dodd-Frank Act specifically requires the disclosure of a chief executive officer's compensation. *See* Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376, § 953(b)(a) (requiring the disclosure of "the annual total compensation of the chief executive officer").

that courts in this circuit award.[5] (Motion at 17-18.) None of the cases Defendants cite to arguing for an award of 10% of the common fund are on point. (Opp. at 18.) First, the court in *Cal-Maine Foods, Inc. v. Pyles* stated that the benefit there was not "readily quantifiable," which is not the case here. 858 A.2d 927, 930 (Del. 2004). Also, unlike here, in *Seinfeld v. Coker*, the parties settled, showing that the litigation was less contested and risky for the plaintiff's attorneys than the present action. 847 A.2d 330, 331 (Del. Ch. 2000). And in *In re Coleman Co. S'holders Litig.* is likewise entirely distinguishable because there "class counsel largely piggy-backed [the other shareholder's] negotiation and settlement, essentially mimicking the bargaining position of the settling party that preceded them[.]" 750 A.2d 1202, 1212 (Del. Ch. 1999).

In the place of the common fund analysis discussed in Plaintiff's Motion, which is well-grounded in existing Delaware law, Defendants propose an arbitrary "*quantum meruit* analysis" which amounts to nothing more than Defendants' *ipse dixit*-based contentions in favor of sweeping reductions in the amounts of each component of the requested fee award. For example, in arguing that Plaintiff's counsel should be awarded "$10,000 for the additional disclosures" (Opp. at 19), Defendants do not point to any legal authority. Indeed, the court in *In re Sauer-Danfoss Inc.*, on which Defendants rely extensively, establishes that the minimum fee for a supplemental disclosure is in the range of $75,000, and this for disclosures that amounted to the correction of typographical errors or other types of "careless mistake[s]" in proxy statements. 65 A.3d at 1129. Leaving aside that the supplemental disclosures obtained here went far beyond the correction of a typographical error, Defendants' unprecedented suggestion of a fee seven and a

---

[5] Defendants' criticism of Plaintiff's citation to *In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166 (E.D. Pa. 2000), is misguided, as Plaintiff cited that case to illustrate the percentage of a common fund that courts generally award. (Motion at 17.) Defendants do not explain why the total amount recovered would have a drastic impact on the percentage of the common fund that the attorneys' fee is based on, particularly where, as in the present action, Plaintiff is requesting a lower percentage than in *Ikon Office Solutions*.

9

half times less than the *minimum* established by Delaware law speaks for itself.

Finally, Defendants criticize the time and effort Plaintiff's attorneys invested in this litigation, asserting that Plaintiff "sat idle until defendants' [sic] filed their motion for judgment on the pleadings." (Opp. at 19.) Defendants ignore counsel's significant investment in researching the Company's public filings and preparing a well-plead Complaint. Such tasks, of course, are an essential component of derivative litigation, which is subject to the heightened pleading standards of Fed. Rule Civ. P. 23.1, as is its contingent nature, which Defendants also overlook. Moreover, although Delaware courts may consider the time expended in determining fees, they have categorically rejected the use of time expended as the principal basis for determining fees, holding that the "benefit achieved by the litigation is the common yardstick by which a plaintiff's counsel is compensated in a successful derivative action." *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1257-58 (Del. 2012) (citation omitted). Simply put, the benefit achieved is the most important factor in determining the proper amount of an attorneys' fee and, as Plaintiff demonstrated in her opening brief, the law is clear that counsel does not get "punished" for securing a fast victory. (Motion at 19.)

In sum, Plaintiff's lawsuit created a monetary benefit to the Company of approximately $6.9 million, helped ensure future compliance with the Company's shareholder-approved Plan, and prompted the Company to make additional material disclosures to shareholders. In so doing, Plaintiff has conferred a substantial benefit on the Company and its shareholders.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiff's Motion, Plaintiff respectfully requests that this Court award Plaintiff's counsel attorneys' fees and expenses in the aggregate amount of $1,990,045.

Dated: October 11, 2013

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Steven J. Purcell
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*